Alvin Ray ANDERSON, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–04–00592–CR, 01–04–00593–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 9, 2006.

Angela Lee Williams, Houston, for appellant.

Carol M. Cameron, Asst. Dist. Atty., Houston, for appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

GEORGE C. HANKS, JR., Justice.

Appellant, Alvin Ray Anderson, was charged by indictment with delivery of a controlled substance, namely cocaine, weighing less than one gram, in Cause No. 925455.[1] In Cause No. 952555, he was charged by indictment for assault on a public servant.[2] Appellant entered a plea of not guilty in both causes. Both indictments alleged two prior felony convictions as enhancements. A jury found appellant guilty as charged in both indictments. Appellant pleaded true to the enhancement paragraphs, and the jury found both enhancement allegations true. The trial court sentenced him to prison for 15 years for delivery of a controlled substance and 55 years for assault on a public servant. Appellant filed a motion for new trial alleging that his trial counsel was ineffective. The court denied this motion after a hearing.

In three points of error, appellant asserts that (1) the trial court erred in denying his request to present expert testimony during the guilt/innocence phase of trial; (2) he was denied effective assistance of counsel during the punishment phase of trial; and (3) the trial court abused its discretion by denying his motion for new trial. We affirm.

## Background

On June 18, 2003, the Houston Police Department's street-level narcotics unit was conducting an undercover investigation in the Montrose and Fourth Ward areas of Houston. Undercover Officer Dirk Bogaard and his squad mate, Officer Ephraim Arjona, were in an unmarked car attempting to buy crack cocaine when appellant gestured the officers over to where he was standing. Bogaard asked appellant if he had seen "Black Mike," an individual who had previously sold crack cocaine in the neighborhood. Bogaard testified that appellant responded by stating that he had not seen "Black Mike" that day and asked why Bogaard wanted him. Bogaard told appellant he "wanted a 30."[3] Appellant responded that he could get a 30 for Bogaard and then said that, if he could get in the car, he would take them to go get the drugs.

Appellant gave the officers driving directions to the 200 block of West Gray. Appellant then told Bogaard to give him the $30 and park the car. He got out of the car, and walked down the street out of Bogaard's view. Once he got out of view, the officers radioed to the surveillance officers and arrest team officers to give them a description of appellant. A few minutes later, appellant returned to the car and handed Bogaard three small pieces of crack cocaine. As the officers were driving appellant back to where they had picked him up, they were pulled over by a marked police car. Appellant was arrested without incident.

Deputy Bernard Kelly was working as a shower deputy in the inmate processing center at the Harris County Jail on the

---

**1.** See TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 2003).

**2.** See TEX. PEN.CODE ANN. § 22.01(b)(1) (Vernon Supp.2005).

**3.** Bogaard testified that this meant that he wanted to buy $30 worth of crack cocaine.

day after appellant's arrest. Kelly testified that as appellant was walking through the shower room door and into the medical cell, appellant stopped, looked at Kelly and stated, "I remember you. I will get you. I will kill you and your family when I get out of here." After appellant threatened him, Kelly decided to move appellant from the medical cell to a separation cell because he was being disruptive. Appellant responded by cursing and taking a "fighting stance." Kelly testified that he approached appellant and told him to turn around. Appellant then swung at Kelly, hitting his face and leaving a small bruise on his cheek. Kelly testified that appellant struck him at least four or five times with his closed fist. Appellant was charged with assault on a public servant.

During the guilt/innocence phase of trial, appellant attempted to elicit expert testimony from Officer Arjona on what the difference is between a terroristic threat and an assault, and "the ability to arrest on either [offense]." The State objected on the basis of relevance, and the trial court sustained the objection. Later, appellant requested permission to question Officer Leon Byrd[4] on the definition of assault. The State again objected to relevance, and the trial court sustained the objection. The jury ultimately found appellant guilty of assault on a public servant.

During the punishment phase, appellant pled true to the enhancement paragraphs in the indictments. The defense attempted to offer the reports of Dr. Edward Friedman who examined appellant for competency and sanity, but the trial court sustained the State's hearsay objection to this evidence. The defense rested without introducing any evidence, and the trial court sentenced appellant to 15 years in

prison for delivery of a controlled substance and 55 years in prison for assault on a public servant.

In his motion for new trial, appellant introduced an affidavit stating that his trial counsel should have interviewed the men in the holding tank when the assault occurred. He alleges that those men could have testified that he did not strike Officer Kelly. Appellant also offered the affidavit of Ronald Durst, one of the men in the holding cell who stated that he was present during the altercation between appellant and Officer Kelly. Durst testified that no one had contacted him regarding what he had seen that day. He stated that, had someone contacted him closer to the altercation, his memory would have been better and he could have told the jury what he had observed. After hearing the arguments of counsel, the trial court denied the motion for new trial.

### Admissibility of Expert Testimony

■ In his first point of error, appellant contends that the trial court erred in denying his request to present expert testimony from Officer Arjona on the difference between a terroristic threat and an assault. Further, appellant argues that Officer Byrd should have been permitted to testify to the definition of assault.

■ We review a trial court's decision on the admissibility of evidence under an abuse of discretion standard of review. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App.2000). An abuse of discretion occurs where a trial court's decision lies outside the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990). In determining whether a trial court has abused its discretion, we consider whether

---

4. Officer Byrd was another member of the street-level narcotics unit and was performing

surveillance on Officers Bogaard and Arjona on the date of appellant's arrest.

the court acted arbitrarily or unreasonably or without reference to guiding rules or principles. *Id.* at 380.

▓▓▓ Appellant claims that the officers' testimony was admissible pursuant to Texas Rule of Evidence 702, which provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX.R. EVID. 702. Rule 702 requires the proponent to prove to the trial court, by clear and convincing evidence, that the proffered evidence is relevant and reliable. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App.1992). An expert witness may state an opinion on a mixed question of law and fact as long as the opinion is confined to the relevant issues and is based on proper legal concepts. *Blumenstetter v. State*, 135 S.W.3d 234, 248 (Tex.App.-Texarkana 2004, no pet.) (*citing Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 365 (Tex.1987)). However, an expert witness may not testify to his opinion on a pure question of law. *Baxter v. State*, 66 S.W.3d 494, 504 (Tex. App.-Austin 2001, pet ref'd) (*citing Lyondell Petrochemical Co. v. Fluor Daniel, Inc.*, 888 S.W.2d 547, 554 (Tex.App.-Houston [1st Dist.] 1994, writ denied)).

▓▓▓ The differences between what constitutes the criminal offenses of assault and terroristic threat involve issues of statutory interpretation. Statutory interpretation is a question of law. *Kuhn v. State*, 45 S.W.3d 207, 209 (Tex.App.-Texarkana 2001, pet. ref'd.). An expert witness may not testify to his opinion on a pure question of law. *Baxter*, 66 S.W.3d at 504. It is the trial court's duty to instruct the jury

on the law applicable to the case. *See* TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2005). Thus, we hold that the trial court did not err in not admitting the officers' testimony.

Appellant relies on a line of unpublished cases upholding the use of expert testimony by police officers regarding whether an object constituted a deadly weapon. *See Brown v. State*, 1998 WL 177987 (Tex. App.-Houston [1st Dist.] 1998, no pet.) (officer allowed to testify that metal pipe is a deadly weapon); *see Bernal v. State*, 1992 WL 45794 (Tex.App.-Houston [14th Dist.] 1992, no pet.) (officer may give expert testimony that prison shank is a deadly weapon); *see also Simmons v. State*, 1986 WL 10451 (Tex.App.-Houston [14th Dist.] 1986, pet. ref'd) (no abuse of discretion in officer giving expert opinion that metal bat is a deadly weapon). Appellant notes that the officers in these cases were allowed to give their opinions on what constitutes a deadly weapon, despite the fact that the term is defined in the Penal Code. By analogy, appellant argues that there is no difference between an officer defining an object as a deadly weapon and an officer testifying to what actions constitute an assault. We disagree. While the question of whether a certain object can be used as a deadly weapon is a mixed question of law and fact, the testimony appellant sought was not. Appellant's cases are inapplicable.[5]

We overrule appellant's first point of error.

### Motion for New Trial

▓▓▓ In his second point of error, appellant contends that the trial court abused its discretion by denying his motion for new trial. In his motion for new trial, appellant alleged ineffective assistance of

---

5. Moreover, unpublished cases have no precedential value. TEX.R.APP. P. 47.7.

counsel based upon his counsel's failure to "contact and subpoena witnesses and prove defendant's innocence."

 We review a trial court's ruling on a motion for new trial under an abuse-of-discretion standard. *Charles v. State,* 146 S.W.3d 204, 208 (Tex.Crim.App.2004). Where, as here, the motion for new trial alleges ineffective assistance of counsel, we must determine whether the trial court's determination of the ineffective assistance claim and denial of the motion for new trial were clearly wrong and outside the zone of reasonable disagreement. *Keller v. State,* 125 S.W.3d 600, 606–07 (Tex.App.-Houston [1st Dist.] 2003), *pet. dism'd, improvidently granted,* 146 S.W.3d 677 (Tex.Crim.App. 2004).

 To be entitled to a new trial based on a claim for ineffective assistance of counsel, a defendant must demonstrate on appeal that (1) counsel's performance was so deficient that he was not functioning as acceptable counsel under the sixth amendment; and, (2) but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Gamble v. State,* 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.). Assertions of ineffective assistance of counsel must be firmly founded in the record. *Bone v. State,* 77 S.W.3d 828, 835 (Tex.Crim.App. 2002). In the absence of a record reference concerning counsel's reasoning, we must generally presume that appellant's trial counsel had a plausible reason for his actions. *See Thompson v. State,* 9 S.W.3d 808, 814 (Tex.Crim.App.1999).

Appellant argues that controlling authority requires reversal on ineffective assistance of counsel grounds when defense counsel fails to contact potential punishment witnesses. *See Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App.1986); *see*

*also Milburn v. State,* 15 S.W.3d 267, 269 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). These cases can be easily distinguished. In both *Butler* and *Milburn,* the defendant's trial counsel testified at the motion for new trial hearing. *Butler,* 716 S.W.2d at 52; *Milburn,* 15 S.W.3d at 270. In those cases, the trial counsel was given the opportunity to state on the record his reasons for not calling certain witnesses. *Butler,* 716 S.W.2d at 52; *Milburn,* 15 S.W.3d at 270.

In this case, because appellant did not call his trial counsel as a witness at the motion for new trial hearing, there is no record from which we can determine whether counsel acted in a reasonably professional manner in not calling any witnesses. The only evidence presented at the hearing was appellant's own affidavit and the affidavit of Ronald Durst, an alleged witness to the "assault" on Officer Kelly. Moreover, in his affidavit, Durst stated that he was present during the altercation between appellant and Officer Kelly, but that he did not remember the details and would not be able to state who struck whom.

As we have previously noted, any claim of ineffective assistance must be firmly grounded in the record. *See Bone,* 77 S.W.3d at 835. In the absence of a record concerning trial counsel's reasons for acting as he did, we cannot conclude that trial counsel's performance was deficient. *See Gamble,* 916 S.W.2d at 93. Accordingly, we find that appellant has not overcome his burden of showing that his trial counsel's performance fell below the standards of professional norms. *See id.*

We overrule appellant's second point of error.

### Ineffective Assistance of Counsel

 In his third point of error, appellant contends that his appointed trial coun-

sel rendered ineffective assistance during the punishment phase of trial because he failed to properly present punishment evidence. Specifically, appellant complains that his trial counsel failed to present mitigating evidence that might explain or negate his extensive criminal history.

It is the defendant's burden to prove ineffective assistance of counsel. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. There is a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. *Id.,* 466 U.S. at 689, 104 S.Ct. at 2065. Here, neither the motion nor the hearing on appellant's motion for new trial mentioned mitigation of appellant's criminal history. Accordingly, this argument is not preserved for appellate review. TEX. R.APP. P. 33.1.

We overrule appellant's third point of error.

### Conclusion

We affirm the judgment of the trial court.