Opinion issued January 10, 2008 
















Opinion issued
January 10, 2008













            

                                                

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

____________

 

NO. 01-06-01052-CR

____________

 

DAN EDWARD CHANDLER, Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 

 



On Appeal from 248th District Court

Harris County, Texas

Trial Court Cause No. 1080870








 

 



MEMORANDUM OPINION

 

          A
jury convicted appellant, Dan Edward Chandler, of the felony offense of
indecency with a child and assessed punishment at ten years’ imprisonment.  See
Tex. Pen. Code Ann. §§12.33,
21.11 (Vernon
Supp. 2007).  In one point of error,
appellant contends that the trial court erred in denying his motion for new
trial on the ground that he was deprived of the effective assistance of
counsel.  We affirm.

I. 
Factual and Procedural Background

A.  Guilt-Innocence Phase

          R.B.,
the complainant, who was 20 years old at the time of trial, testified that in
November 2000, she was 13 years old and living in Indiana. 
R.B.’s mother is appellant’s sister. 
Around that time, R.B.’s father developed a brain tumor, and he and the
family traveled to Dallas, Texas for a series of doctor’s appointments
in order to diagnose the cause.  The
family arranged for R.B. to travel to Houston
with appellant so that she could stay with appellant and his family while
R.B.’s father sought treatment.

          When
R.B. and appellant arrived in Houston,
appellant’s wife and son were asleep. 
R.B. and appellant sat on the couch and watched a movie.  At some point, R.B. went upstairs to change
into her pajamas, and then she came back to the couch.  Appellant asked R.B. to lie down with him on
the couch, and she agreed.  Appellant
began rubbing R.B.’s leg, making her feel uncomfortable.  Appellant rubbed under her pants and
underwear, eventually touching and inserting his fingers into her vagina.  R.B. testified that she could feel
appellant’s erect penis touching her back and that he “had it pulled out.”  After appellant began to get on top of her,
R.B. ran upstairs and locked herself in the guest bedroom.

          The
next morning, appellant came into her room while she pretended to be asleep and
then left the room.  Later, R.B. went
downstairs to ask appellant where her aunt and cousin were; he informed her
that they had left for the day.  Because
R.B. did not want to be left alone in the house with appellant, she agreed to
go to Galveston
with him.  R.B. took a quick shower and
while she was getting dressed, appellant knocked on the door asking to come in,
but R.B. told him to wait.

          While
at the movies in Galveston,
appellant again rubbed R.B.’s leg and her feet. 
R.B. testified that she feared what she anticipated would happen next
and decided to get up and go toward the bathroom, where she called a friend,
Faith Blevins, to talk with her.  When
R.B. ended her conversation with Ms. Blevins, she went back in the theatre to
watch the remainder of the movie.

          After
the movie, R.B. called her mother to ask her to come get her right away.  R.B. felt uncomfortable telling her mother at
that time what had happened to her.  The
next day, R.B. and appellant met R.B.’s parents at a gas station between
Houston and Dallas, and R.B. went back to Dallas
with them.  R.B. stated that she tried to
talk to her mother in Dallas,
but her mother acted as if she did not want to hear about the incident.

          Approximately
a week after they had gotten back to Indiana,
R.B. told her aunt what had happened to her, and her aunt acted supportively.  Her aunt wanted her to report the incident,
but R.B. made her promise not to tell anyone because she was ashamed that it had
happened and did not want anyone else to know about it.  Eventually, R.B.’s aunt informed R.B.’s
mother.  R.B. testified that once she
chose to press charges, neither her aunt nor her mother were supportive.  R.B. had two telephone interviews with
Officer Stephens of the Houston Police Department prior to trial, but never met
with her in person.  R.B. testified that
in the first taped phone interview, she did not tell Officer Stephens all the
details relating to the abuse because she did not feel that her family would be
supportive.

          Appellant’s
former wife, who was married to him at the time of the incident, testified that
R.B. spent at least one night at their house, but she did not remember many of
the details.  Appellant did not call any
witnesses in the guilt-innocence phase of trial.  

          In
his closing argument, trial counsel attacked the investigation of Officer
Stephens, claiming that it was not thorough, and argued that the police failed
to investigate several key witnesses.  He
also attacked the credibility of R.B., claiming that she was untruthful.  Following deliberations, the jury found
appellant guilty of indecency with a child.

 

B. 
Punishment Phase

          After
appellant had been found guilty, the State and appellant each presented
testimony in the punishment phase of trial. The State presented six
witnesses.  Among these witnesses, the
State offered appellant’s nieces, T.B.C. and N.V.C., who were sisters living in
Kentucky.  At his request, appellant had hosted each
girl in his home separately when they were 13 to 14 years old.  

          1.       Testimony
of N.V.C.

          N.V.C.
visited appellant first and testified that appellant had sexually abused her
daily over the course of her two-week visit. 
The abuse began when she felt appellant under the covers and in bed with
her the first morning of her visit. 
N.V.C. testified that appellant caressed her back and rubbed her thighs
“inappropriately.”  She realized that he
had removed her shorts and had his hand on her vagina and another on her breast
under her shirt.  He continued to fondle
her even when his son entered the room requesting breakfast.

          N.V.C.
testified further that appellant had sexually assaulted her on the second night
of her visit while they were watching a movie. 
She stated that appellant caressed her vagina with his foot and slid his
body next to hers.  Appellant took
N.V.C’s pants off, partially removed his, and placed his penis into her vagina.  N.V.C. testified that she felt great physical
pain during the encounter and later noticed a mixture of semen and blood in her
urine.  

          During
her stay, appellant had intercourse with her every day, sometimes more than
once.  N.V.C. detailed these sexual
assaults as follows: (1) appellant performed oral sex on her and put his penis
into her mouth, (2) appellant fondled her and sexually assaulted her during a
trip to Sea World, and (3) appellant sexually assaulted her in the break room
at his job during an overnight shift.  

          2.       Testimony
of T.B.C.

          Appellant’s
other niece, T.B.C., testified that she had several phone conversations with
appellant concerning her visiting Houston.  During these conversations, appellant would
ask her to touch her “private area.” 
T.B.C. accompanied appellant to Houston
after he attended N.V.C.’s high school graduation in Kentucky. 
At some point in her visit, appellant touched T.B.C.’s vagina beneath
her swimsuit while they were in the pool. 
She also awoke frequently to appellant in her bed, “cuddling” her.  

          Following
a trip to Galveston
beach, appellant got in the shower naked with T.B.C.  When T.B.C. got out of the shower, appellant
stated that he wanted to put aloe vera on her back and shoulders in order to
treat her sunburn.  Appellant then gave
T.B.C. a white pill for the pain she was experiencing, which T.B.C. thought was
aspirin.  Subsequently, appellant laid
T.B.C. on the bed, rubbed some aloe vera on her back and sides, “started
cuddling [her] again,” and put his penis in her vagina from behind her.  T.B.C. “blacked out” and awoke dressed and
upstairs in the guest bed.  She noticed
that it burned when she urinated after the incident.  She told no one of the incident when she
returned home.           

3.    
Testimony of T.B.C.’s and N.V.C.’s Mother

          T.B.C.’s
and N.V.C.’s mother testified that she had been divorced from appellant’s brother
for 16 years.  In June 2005, she
mentioned something to T.B.C. about T.B.C.’s going to visit appellant.  T.B.C. said that she had no desire to see
appellant again.  The next morning,
N.V.C. told her what had happened to both T.B.C. and herself.  T.B.C.’s and N.V.C.’s mother contacted Kentucky authorities,
who placed the mother in contact with the Houston Police Department.

4.    
Testimony of Appellant’s Former Wife

          Ms.
Chandler stated that she had been divorced from appellant for approximately a
year.  She testified that appellant would
get angry when she did not want to have sex with him.   Appellant constantly touched her genitals,
even while watching television.  Ms.
Chandler also testified that she used prescription medicine to sleep and would
awake to find appellant having sex with her. 
These incidents occurred for years, but when she asked appellant about
it, he claimed that she “came on to him” while she slept.

          Ms.
Chandler also described four incidents involving appellant’s aggression during
their marriage.  Once, appellant dragged
her through the house, threw her across the dining room, and left bruises on
her thighs and arms.  In another
incident, appellant threw a glass of coke at a wall during an argument with
her, and on a second occasion, he threw ice at someone in a movie theater.  Finally, she witnessed appellant’s “banging”
a car that was parked too close to his. 
She testified that they had a “nasty divorce” because appellant had an
affair during their marriage.

5.    
Appellant’s Testimony

          Asserting
that he was falsely accused, appellant denied the claims made by his nieces.  Appellant also testified that he had helped
R.B.’s mother financially in the past. 
Appellant stated that he had engaged in a long affair with N.V.C.’s and
T.B.C.’s mother, which ended when she divorced his brother.  Appellant explained that after he had broken
off the affair, appellant stopped giving money to N.V.C. and T.B.C.  He also testified that he had been asked to
buy a car for one of them and had refused.

6.    
Appellant’s Punishment Witnesses

          Appellant’s
co-worker rebutted N.V.C.’s claim of sexual assault at appellant’s workplace by
testifying that there was no lock on the break room door where N.V.C. testified
that appellant had sexually assaulted her. 
He also noted that cleaning staff and security entered the room at all
hours of the night.  Appellant’s fiancée
testified that she had met appellant six or seven years earlier and never
encountered any problems involving appellant’s conduct with her children.  Finally, a friend of appellant testified that
he trusted appellant around his son.

          Appellant’s
mother and the grandmother of the three girls testified that N.V.C. never
complained of anything inappropriate during her stay with appellant in Texas and that N.V.C.
went shopping with appellant when he came to her high school graduation.  She also testified that while N.V.C. was in Texas with appellant,
she complained that appellant was not taking her out and buying her presents
like she had anticipated.  Finally, she
offered her opinion that the reputation for truthfulness of N.V.C., T.B.C., and
R.B. was poor. 

          Appellant’s
brother testified that he was close to T.B.C. and that she had confided in him
in the past.  He noted that when N.V.C.
returned from Texas,
he noticed no change in her behavior.  He
also testified that he felt that R.B. had very little personal integrity.

          Both
appellant’s co-worker and his fiancée testified that appellant could satisfy
the conditions of community supervision by following all the rules of the court.

          7.       State’s Rebuttal Witness

          In
rebuttal, the State called Dr. Lawrence Thompson, Director of Therapy and
Psychological Services at the Children’s Assessment Center.  He testified about a phenomenon known as
“grooming,” whereby a sex offender prepares his victim for the assault.  Dr. Thompson also testified about delayed
outcries of child sexual abuse sufferers and general behaviors that a child
sexual abuse victim might display.  He
explained that psychological literature held that a sex offender could not be
cured, but could be taught to manage his or her impulses.  He concluded that, in his opinion, limiting a
sex offender’s access to children was the only way to ensure that the
individual would not reoffend.   

          Dr.
Thompson detailed the sex offender treatment program provided by the Texas
Department of Criminal Justice Institutional Division (TDCJ) as “very thorough
and intense” and articulated its benefits, including the offender’s restricted
access to materials that he or she might use to fantasize about children,
including television, magazines, and books. 
Dr. Thompson distinguished the TDCJ program from outpatient programs in
which an offender might still have access to such material or to children while
participating in treatment.

          On
cross-examination, appellant’s attorney asked Dr. Thompson whether he was
familiar with “the many different conditions” that may be imposed on sexual
offenders who receive community supervision, including required counseling.  In an attempt to establish bias, appellant’s
attorney also elicited the fact that Dr. Thompson was a Harris County
employee whose testimony on behalf of the State was part of his work-related
duties.

          Following
the testimony, the jury assessed appellant’s punishment at ten years’
confinement.  Appellant timely filed his
Motion for New Trial and Motion in Arrest of Judgment, contending that trial
counsel had rendered ineffective assistance of counsel by having failed to
investigate the credibility of R.B. and, had he done so, would have discovered
that R.B. had made statements that revealed bias against appellant.  The motion also alleged that trial counsel did
not present any character witnesses for appellant and did not let appellant
take the stand in his own defense during the guilt-innocence phase of trial.[1]  

          The
trial court conducted an extensive evidentiary hearing on the motion.  Testifying during the hearing were R.B.’s
mother, appellant’s fiancée, appellant, and trial counsel.  At the conclusion of the hearing, the trial
court signed a written order denying the motion.

 


II. 
Ineffective Assistance of Counsel

          In his sole point of error, appellant
argues that he received ineffective assistance of counsel at his trial because
his trial counsel failed (1) to investigate the background of R.B. and other
facts of the case, (2) to call certain witnesses during the guilt-innocence
phase of trial, and (3) to prepare for and to present evidence at the
punishment phase of the trial properly. 
Appellant claims that, but for these omissions, there is a reasonable
probability that the outcome of the case would have been different.

A.  The Standard of Review

          The
standard of review for evaluating claims of ineffective assistance of counsel
is set forth in Strickland v. Washington,
466 U.S. 668, 687, 104 S.
 Ct. 2052, 2064 (1984).  Strickland requires a two-step analysis
whereby an appellant must show both that (1) counsel’s performance fell below
an objective standard of reasonableness and (2) but for counsel’s unprofessional
error, there is a reasonable probability that the result of the proceedings
would have been different.  Id.;
Vasquez v. State, 830 S.W.2d 948, 949
(Tex. Crim. App. 1992).  Strickland defines reasonable
probability as a “probability sufficient to undermine confidence in the
outcome.” 466 U.S.
at 694, 104 S. Ct.
at 2068.  In reviewing counsel’s
performance, we look to the totality of the representation to determine the
effectiveness of counsel, indulging a strong presumption that the attorney’s
performance falls within the wide range of reasonable professional assistance
or trial strategy.  Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  Furthermore, a claim of ineffective
assistance must be firmly supported in the record.  Id.

          We
review a trial court’s ruling on a motion for new trial under an abuse-of-discretion
standard.  Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004); Anderson v. State, 193 S.W.3d 34, 39
(Tex. App.—Houston
[1st Dist.] 2006, pet. ref’d).  Under
this standard, we examine whether the trial court’s determination of the
ineffective assistance claim and denial of the motion for new trial were
clearly wrong and outside the zone of reasonable disagreement.  Anderson,
193 S.W.3d at 39.  We do not substitute
our judgment for that of the trial court. 
Charles, 146 S.W.3d at
208.  We review the evidence in the light
most favorable to the trial court’s ruling and presume that all reasonable
findings that could have been made against the losing party were so made.  Id.  Only if no reasonable view of the record
could support the trial court’s ruling do we conclude that the trial court
abused its discretion by denying the motion for new trial.  Id.

 

 

B. 
Appellant’s Trial Counsel Was Not Ineffective

          1.  Investigation of the background of R.B.
and other facts of the case

          A criminal
defense lawyer has a duty to make an independent investigation of the facts of
a case, which includes seeking out and interviewing potential witnesses.  Ex
parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).  A breach of the duty to investigate may
result in a finding of ineffective assistance “where the result is that any
viable defense available to the accused is not advanced.”  Ex
parte Ybarra, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982).  In defining the duty to investigate, the
United States Supreme Court has stated that “counsel has a duty to make
reasonable investigations or to make a reasonable decision that makes
particular investigations unnecessary. 
In any ineffectiveness case, a particular decision not to investigate
must be directly assessed for reasonableness in all the circumstances, applying
a heavy measure of deference to counsel’s judgments.”  Strickland,
466 U.S.
at 691, 104 S. Ct. at 2066.

 
Appellant contends that trial counsel did not conduct a thorough
investigation into the background of R.B. 
Appellant further claims that it is “undisputed that very little effort
was made to research the credibility of [T.B.C. and N.V.C.]” because no
investigator was ever sent to Kentucky
to investigate their background. Appellant asserts that a complete
investigation would have established motives for the three girls to falsify
their testimony, which “was especially harmful in light of the weakness of the
state’s case in chief, which rested solely on the testimony of one witness who
did not disclose the alleged crime until years afterward.”   

          The record reveals that appellant’s
trial counsel conducted an investigation of the facts and circumstances
surrounding the sexual abuse of all three girls. At the hearing on the motion
for new trial, counsel testified that he met with appellant numerous times at
his office, in the courtroom, and by phone. 
Additionally, the testimony revealed that trial counsel spoke to several witnesses, including
appellant and five of appellant’s family members.  

          The trial attorneys also contacted
family members who lived close to each of the girls, including R.B.’s
mother.  Trial counsel attempted to
contact R.B.’s aunt and Faith Blevins, the friend to whom R.B. made her first
outcry.  To this end, the trial attorneys
hired an independent investigator in an attempt to locate Blevins, but they could
not find her.  Trial counsel also sought
out-of-state records, including an offense report related to N.V.C. and her
mother, which was introduced into evidence. 
Finally, trial counsel spoke with a police officer in Kentucky who had been dispatched to N.V.C.
and T.B.C.’s home in response to the girls’ report of the sexual abuse by
appellant.

          In
light of the record, we cannot conclude that the trial court abused its
discretion by determining that trial counsel conducted a reasonable
investigation as to R.B.’s background and other facts of the case, and that
appellant failed to meet the first prong of Strickland.  See
Thompson, 9 S.W.3d at 813.

2.     Failure to Call Certain Witnesses

          Appellant also argues that his trial
counsel was ineffective because counsel did not offer the testimony of R.B.’s
mother, Faith Blevins, and R.B.’s aunt during trial.  

          At
the hearing on the motion for new trial, R.B.’s mother testified that her
daughter made statements after appellant was convicted evidencing bias, namely,
that she was glad that appellant no longer had his house or money.  In his brief, appellant does not claim that
R.B.’s statements to her mother indicating R.B.’s animus or bias toward
appellant were unknown to trial counsel because trial counsel failed to use due
diligence before trial.  See Delamora v. State, 128 S.W.3d 344,
355 (Tex. App.—Austin 2004, pet. ref’d). 
To the contrary, these statements were made after trial and do not speak
to trial counsel’s failure to develop facts for trial sufficiently.  Moreover, appellant’s trial attorney
testified that he decided not to call R.B.’s mother to testify after
determining that her version of events corroborated R.B.’s and that she would
be a more favorable witness for the State. 


          With
respect to R.B.’s aunt, appellant’s trial counsel said that he had attempted to
secure her attendance but, due to an illness in the family, she was not willing
to travel to Houston.  When trial counsel suggested that she be
compelled to testify, appellant told him to “drop that.”

          As
previously noted, counsel made several attempts to contact Faith Blevins, but
was unsuccessful.

          On
this record, we cannot conclude that the trial court abused its discretion by
determining that trial counsel conducted a reasonable investigation, the first
prong in Strickland, or that
testimony from these witnesses would not have, to a reasonable probability,
brought about a different result in the trial, the second prong of Strickland.  See Strickland,
466 U.S. at 687, 104 S. Ct. at 1064.

          3.  Failure
to Prepare for and to Present Evidence at the Punishment Phase of the Trial

          Appellant
next argues that trial counsel was ineffective because he failed to prepare for
the punishment phase properly.  At the
motion-for-new-trial hearing, appellant’s fiancée testified that she provided
trial counsel with a list of approximately ten witnesses who could have
testified in appellant’s behalf, but none of these was called.  Appellant also contends that trial counsel
was ineffective in failing to have him examined by a psychiatrist or
psychologist to establish his suitability for community supervision and to
dispute the opinion of the State’s expert that sex offenders cannot be cured.
Additionally, appellant argues that counsel should have produced evidence as to
the effectiveness of alternative treatment programs for sex offenders. Finally,
appellant argues that counsel was ineffective in his failure to conduct a voir
dire examination on the issue of community supervision and that such failure
harmed appellant’s chances of receiving community supervision from the jury. 

          Appellant’s
trial attorney explained at the motion for new trial hearing that he conducted two
to three mock direct and cross-examinations of appellant before trial began.  The Sunday before the punishment phase
commenced, trial counsel spoke in depth with appellant regarding the nature of
appellant’s testimony.  At the hearing on
the motion for new trial, appellant testified that he and trial counsel
discussed the topics of his testimony and that he understood it.  The record thus demonstrates that appellant’s
attorney prepared appellant for his punishment testimony.

With regard to the ten witnesses that
appellant’s fiancée procured for trial counsel, the record does not reveal their
identities or whether the substance of their testimony would have been helpful
to appellant.  The record shows that
appellant’s trial counsel presented evidence in the punishment phase of trial
from appellant, appellant’s co-worker, appellant’s fiancée, appellant’s friend,
appellant’s mother, and appellant’s brother. 
Assertions of ineffective assistance of counsel must be firmly founded
in the record.  Bone v. State, 77 S.W.3d 828, 835 (Tex.
Crim. App. 2002).  Appellant has not
shown, to a reasonable probability, how the additional witnesses who were not
called to testify would have brought about a different result.  See Strickland,
466 U.S. at 687, 104 S. Ct. at 1064.

Although appellant’s trial counsel
did not present testimony from a psychiatrist or psychologist to establish
appellant’s suitability for community supervision or to refute the testimony of
the State’s expert, appellant’s trial attorney testified at the motion-for-new-trial
hearing that he had secured Dr. Jerome Brown as an expert witness, but did not
believe Dr. Brown’s testimony necessary. 
There is no evidence in the record to support appellant’s contention
that a jury would have assessed community supervision had an expert testified
on his behalf.  The range of punishment
for appellant’s crime is two to twenty years’ confinement, with the possibility
of community supervision.  The jury
assessed punishment at ten years.  Tex. Pen. Code Ann. § 12.33 (Vernon Supp. 2007).  Assuming without deciding that trial
counsel’s decision not to procure Dr. Brown’s testimony or to produce evidence
as to the effectiveness of alternative treatment programs for sex offenders
meets the first prong of Strickland,
appellant has not demonstrated that any prejudice resulted.  See
Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.).

Finally, with regard to voir dire,
appellant’s trial counsel confirmed that he did not examine the venire panel regarding
the issue of community supervision.  Appellant’s
attorney, however, did not ask the trial attorney his reasons for not asking about
community supervision during voir dire.  The
record indicates that both the trial court and the State discussed probation at
length during their portions of voir dire. 
The record contains no evidence as to counsel’s reason for failing to
voir dire on the issue of community supervision.  Any allegation of ineffectiveness must be
firmly founded in the record, which must demonstrate affirmatively the alleged
ineffectiveness. Thompson, 9 S.W.3d at 813. We will not speculate to find trial counsel ineffective when the record
is silent on counsel’s reasoning or strategy. Gamble, 916 S.W.2d at
93.  Appellant thus fails to
rebut the presumption that counsel acted reasonably.  See Thompson, 9 S.W.3d at 814.  Therefore, we conclude that the trial court
did not abuse its discretion by failing to grant appellant’s motion for new
trial.

 

Conclusion

Based upon a review of the record as
a whole, we hold that appellant has failed to show by a preponderance of the
evidence that he received ineffective assistance of counsel.  The trial court thus did not abuse its
discretion when it denied his motion for new trial.  Accordingly, we overrule appellant’s sole point
of error and affirm the judgment of the trial court.

 

                                                                             Jane Bland

                                                                             Justice

 

Panel consists of Chief
Justice Radack and Justices Alcala and Bland.

 

Do not publish.  See Tex.
R. App. P. 47.2(b).











[1]
              Appellant
does not assert on appeal that trial counsel prevented him from testifying
during the guilt-innocence phase of trial.