Opinion Issued January 8, 2009









Opinion Issued January 8,
2009

 

 

 

 

 

 

 

 

 

 

 

 

 










 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-08-00055-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



CLARENCE RAY RANDOLPH, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 177th District Court

Harris County, Texas

Trial Court Cause No. 1116419








 



MEMORANDUM  OPINION

           Clarence Randolph was
convicted of possessing a prohibited item, a shank, in a correctional facility,
an offense enhanced by two prior convictions in the indictment.  Tex. Penal Code Ann. § 46.10 (Vernon
2003).  A jury, having found true the enhancement allegations, sentenced him to
25 years’ confinement.  Randolph appeals his conviction, alleging that the
trial court abused its discretion in denying his motion for new trial because
he was deprived of effective assistance of counsel.  We affirm.

Background

Randolph was an inmate in the Harris County jail when officers discovered a “shank” in his possession.[1] 
Randolph and another inmate, Sam Reuss, argued about an empty lower bunk. 
According to Reuss, Randolph threatened to “cut” Reuss, pulled a “black stick
with a razor blade on it” out of his waistband, and waved it around and cursed
at Reuss.  Reuss claimed that other inmates, friendly with Randolph, blocked
him from accessing a call button in the jail cell to contact the jail
officers.  Because he could not contact the officers, Reuss called his fiancée
and asked her to visit him, which allowed him to leave the cell and remove
himself from the altercation.  After Reuss’s visit with his girlfriend, he
reported the incident to a deputy, and officers investigated.  During a search
of the cell, officers did not find a weapon on Randolph’s person, but
discovered a black pen with a razor stuck in it, resembling the weapon Reuss
described, near Randolph’s belongings.  According to the testimony of Deputy E.
Cantu, Randolph admitted to the officers that the shank was his.  At trial, Randolph testified that the shank was not his, and that he never told the officers that it
was.  In rebuttal, the State called Assistant District Attorney Matthew
Peneguy, who testified that he was in court on a previous day when Randolph was brought in to discuss his case.  In open court, Peneguy heard Randolph admit that he had a cutting instrument in the jail, which he used to carve
crosses, but he denied that he ever threatened anyone with it. 

In his motion for new
trial, Randolph argued that he was deprived of effective assistance of counsel
because his attorney failed to properly investigate his case and failed to call
witnesses who could rebut the State’s evidence during the guilt/innocence phase
of the trial.  Randolph’s trial counsel did not call any witnesses other than Randolph to testify on his behalf, even though Randolph claimed that others were available
to testify for him, because neither the attorney nor his investigator found
these witnesses, who remained incarcerated throughout the trial.  In an
affidavit attached to the motion for new trial, Randolph’s trial counsel
averred that he and his investigator could not locate the witnesses before
trial and could not find their names or identification numbers until the
bailiff of the trial court contacted the jail, which was not until the
punishment phase of the trial.  Randolph also presented the affidavits of three
other inmates, who were housed with Randolph at the time of the incident.  The
first witness averred that he had never seen Randolph with a shank, and he did
not overhear the conversation between Randolph and the deputy where Randolph admitted that the shank was his.  The second witness averred that he had never
seen Randolph with a shank, and he never heard Randolph admit to the deputy
that he had a shank.  The third witness averred that Randolph possessed
disposable shaving razors, provided to all inmates, which Randolph used for
making crosses and rings, and that he heard Randolph admit to the deputies that
the razors were his, although the deputies never referred to the razors as
shanks. 

Discussion

To prevail on
a claim of ineffective assistance of counsel, the defendant must show that (1)
his counsel’s performance was deficient and (2) a reasonable probability exists
that the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  The first prong of Strickland
requires the defendant to show that counsel’s performance fell below an
objective standard of reasonableness.  Thompson v. State, 9 S.W.3d 808,
812 (Tex. Crim. App. 1999). Thus, the defendant must prove objectively, by a preponderance
of the evidence, that his counsel’s representation fell below professional
standards.  Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App.
2002).  The second prong requires the defendant to show a reasonable
probability that, but for counsel’s unprofessional errors, the result of the
proceeding would have been different.  See Strickland,
466 U.S. at 694, 104 S. Ct. at 2068; see also Thompson, 9 S.W.3d at
812.  In reviewing counsel’s performance, we look to the totality of the
representation to determine the effectiveness of counsel, indulging a strong
presumption that the attorney’s performance falls within the wide range of
reasonable professional assistance or trial strategy.  Thompson, 9
S.W.3d at 813.  Furthermore, a claim of ineffective assistance must be firmly
supported in the record.  Id. (citing McFarland v. State, 928
S.W.2d 482, 500 (Tex. Crim. App. 1996)).

We review a
trial court’s ruling on a motion for new trial under an abuse-of-discretion
standard.  Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004);
 Anderson v. State, 193 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d).  Under this standard, we examine whether the trial
court’s determination of the ineffective assistance claim and denial of the
motion for new trial were clearly wrong and outside the zone of reasonable
disagreement.  Anderson, 193 S.W.3d at 39.  We do not substitute our
judgment for that of the trial court.  Charles, 146 S.W.3d at 208.  We
review the evidence in the light most favorable to the trial court’s ruling and
presume that all reasonable findings that could have been made against the
losing party were so made.  Id.  Only if no reasonable view of the
record could support the trial court’s ruling do we conclude that the trial
court abused its discretion in denying the motion for new trial.  Id.

A criminal
defense lawyer has a duty to make an independent investigation of the facts of
a case, which includes seeking out and interviewing potential witnesses.  Ex
parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).  Under Strickland,
a particular decision not to investigate must be directly assessed for
reasonableness in all the circumstances, applying a heavy measure of deference
to counsel’s judgments.  Strickland, 466 U.S. at 691, 104 S. Ct. at 2066.

Here, Randolph suggested witnesses to his counsel, and counsel and his investigator proceeded to
attempt to find these witnesses.  However, because Randolph provided counsel
with incorrect names for the witnesses, when counsel and his investigator went
to the jail to look for them, they could not find anyone by the names that Randolph gave.  The court bailiff later located the witnesses by phoning the jail and
obtaining the list of inmates housed with Randolph, from which it was possible
to discern the correct names of the witnesses.  In his affidavit attached to
the motion for new trial, Randolph’s trial counsel testified that he did not
fail to call these witnesses as part of trial strategy and that he would have
liked to have the witnesses testify.  Thus, it cannot be said that his failure
to call these witnesses were within the realm of trial strategy.  

However, Randolph fails to show that there is a reasonable probability that, with the testimony of
his proposed witnesses, the outcome of the trial would have been different.  None
of the proposed witnesses’ affidavits contradicted Deputy Cantu’s testimony
that Randolph admitted that the shank was his.  Two of the witnesses stated
that they had not heard the conversation between Randolph and the Deputy, and
thus could not testify that Randolph had not admitted to possession of the
shank.  The third witness testified that Randolph did admit that the shaving
razors were his and that the inmates told the deputies that Randolph used the
razors for making crosses and rings.  This testimony corroborates the testimony
of Deputy Cantu and Matthew Peneguy, who heard Randolph admit that the razors
were his.  The testimony offered by the proposed witnesses in their affidavits
does not undermine the testimony of the State’s witnesses.  We hold that Randolph fails to meet the second prong of the Strickland test as to his claim of
ineffective assistance of counsel that, but for counsel’s unprofessional
errors, the outcome of the trial would have been different.  See Strickland,
466 U.S. at 694, 104 S. Ct. at 2068; see also Thompson, 9 S.W.3d at
812.  

Conclusion

We conclude that Randolph failed to show that, but for the lack of testimony of additional witnesses, the
outcome of the trial would have been different.  Thus, the trial court did not
abuse its discretion in denying Randolph’s motion for new trial.  We therefore
affirm the judgment of the trial court.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Judges Jennings,
Hanks, and Bland.

Do not publish.  Tex. R. App. P. 47.4

 









[1] “Shank” is prison slang term that refers to a handmade
cutting tool.