Opinion issued May 9, 2013



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00488-CR

## NO. 01-12-00489-CR

_____

**DAMIEN LEE GARCIA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case Nos. 09-CR-2345 & 09-CR-2346**

---

**MEMORANDUM OPINION**

Appellant was charged by indictment with aggravated robbery[1] and unlawful possession of a firearm.[2] Appellant pleaded not guilty to the offense of aggravated robbery and guilty to the offense of unlawful possession of a firearm. A jury found him guilty on both counts. Appellant pleaded true to an enhancement allegation for each offense, and the jury found the allegations to be true. The jury assessed punishment at 75 years' confinement for the offense of aggravated robbery and 20 years' confinement for the offense of unlawful possession of a firearm. In four issues, appellant argues (1) he received ineffective assistance of counsel from one of his pretrial attorneys; (2) the trial court abused its discretion by denying his motion for new trial on punishment based on alleged evidence of witness coercion; (3) the evidence is insufficient to support his conviction of aggravated robbery; and (4) the State failed to properly disclose *Brady* evidence.

We affirm in both causes.

## Background

James Carr, complainant, was staying at a friend's house while his house was being renovated. On August 11, 2009, he left the house to take laundry to his mother's house. After descending the stairs to the house, he was hit on the back of the head and fell to the ground. Carr looked up and saw a man wearing a black

---

[1]    *See* TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (Vernon 2011), § 31.03(a), (b)(1) (Vernon Supp. 2012).

[2]    *See* TEX. PENAL CODE ANN. § 46.04(a)(1) (Vernon 2011).

mask around his face pointing a gun at him. The man demanded Carr's watch and wallet. The man took the watch and wallet and fled the scene.

Carr got up, ran to his car, and began following the robber. The robber reached a truck, stopped, saw a police officer in her car, and ran away between some houses. Carr came up to the officer and explained what had happened. The officer set up a perimeter of the area, and the police began to search for the robber. During their search, police received a tip that appellant was hiding underneath a house in the area. One police officer then found appellant hiding underneath a house.

The police officer ordered appellant to come out, and appellant complied. He was told his *Miranda* rights. After that, appellant told the police they would not find a gun where he had been hiding. To the contrary, the police found a gun as well a cellular phone and Carr's wallet and watch. Appellant was charged with aggravated robbery and unlawful possession of a firearm based on a previous felony conviction. After appellant was arrested, a police officer presented Carr with a photographic lineup, which included a picture of appellant. Carr identified appellant.

Before he retained the attorney that represented him at trial, appellant had retained two previous attorneys. Certain offers for plea agreements were made by

the State at that time. What offers were made and whether they were communicated from appellant's attorneys to him are the subject of dispute.

During a pretrial hearing before voir dire commenced, appellant's trial counsel put appellant on the stand to testify about various offers for plea agreements that had been made. Appellant testified that his first attorney told him about a twelve-year offer, which he rejected. Appellant then testified that he later learned that the twelve-year offer had been repeated to his second attorney. He further testified that his second attorney never informed him of this renewed offer. Some time later, the offer went up to sixteen years, which appellant also rejected.

Appellant's second attorney was present to testify. She testified that she told appellant multiple times about the twelve-year offer. She explained that she learned from appellant that there had previously been an eight-year offer that appellant wanted back. She testified that appellant repeatedly refused the twelve-year offers because he wanted to accept the eight-year offer.

Appellant testified again after his second attorney testified. His counsel asked him about the eight-year offer. Appellant testified, "I've never heard about that, sir, ever." He further testified that, had he been told about the offer, he "probably would have accepted."

In preparation for the trial, the State issued a subpoena for appellant's ex-girlfriend to appear for the punishment phase of appellant's trial. At the time,

4

appellant's ex-girlfriend had been charged with certain offenses and was out of jail on bail pending her trial. The State contacted her beforehand to let her know her attendance was required. The day before trial, the State again attempted to contact her, but had some difficulty. The lead prosecutor sent an email to the woman's attorney, telling him that if she did not show up, the State would seek to have her bond forfeited.

Appellant's ex-girlfriend was present and testified at the punishment phase of appellant's trial. During her testimony, she stated that she knew that her testimony was unrelated to her pending charges and that no deals had been made in exchange for her testimony. She testified that she still would have been there even if there were no charges pending.

After the trial, appellant filed a motion for new trial arguing the State improperly coerced his ex-girlfriend to testify. Appellant asked his ex-girlfriend to testify at his motion for rehearing. She refused. Appellant's only evidence at the motion for rehearing was the affidavit of the attorney for appellant's ex-girlfriend at the time of appellant's trial. The attorney explained in the affidavit what the prosecutors had said to him, but did not identify any verbal, emotional, or physical response by his client.

**Sufficiency of the Evidence**

In his third issue, appellant argues the evidence is insufficient to support his conviction of aggravated robbery.

**A.    Standard of Review**

This Court reviews sufficiency-of-the-evidence challenges applying the same standard of review, regardless of whether an appellant presents the challenge as a legal or a factual sufficiency challenge. *See Ervin v. State*, 331 S.W.3d 49, 53–54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)).  This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See Ervin*, 331 S.W.3d at 54.  Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the

evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

**B.     Analysis**

Appellant does not state whether he is challenging the sufficiency of the evidence for one or both offenses. We note that appellant pleaded guilty before the

jury to the offense of unlawful possession of a firearm. As charged, appellant's unlawful possession of a firearm was a felony. *See* TEX. PENAL CODE ANN. § 46.04(a), (e) (Vernon 2011). "In felony cases a plea of guilty before the jury admits the existence of all necessary elements to establish guilt. . . . In such cases there is no question of the sufficiency of the evidence on appeal." *Ex parte Williams*, 703 S.W.2d 674, 678 (Tex. Crim. App. 1986). Accordingly, to the degree appellant meant to challenge the sufficiency of the evidence to the offense of unlawful possession of a firearm, we hold that his plea of guilt establishes the sufficiency of the evidence.

For the offense of aggravated robbery, appellant acknowledges that the evidence establishes that he was apprehended close to the crime scene with the stolen items and a gun in the location where he was hiding. He also acknowledges that the complainant identified him as the person who took his belongings at gunpoint. This is sufficient to support a conviction of aggravated robbery. A person commits aggravated robbery when the person commits robbery and uses or exhibits a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2011). A person commits robbery if, in the course of committing theft, and with intent to obtain or maintain control of property, the person intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id*. § 29.02(a) (Vernon 2011). Theft is the unlawful appropriation of property with

8

the intent to deprive the owner of the property. *Id*. § 31.03(a) (Vernon Supp. 2012). A firearm is considered a deadly weapon. *See id*. § 1.07(a)(17)(A) (Vernon Supp. 2012).

Appellant acknowledges that, "taken out of context," this evidence is sufficient to support a sufficiency of the evidence challenge. Appellant argues that the evidence necessary to put the evidence in context is his testimony from the punishment phase of the trial. We disagree. In a challenge of the sufficiency of the evidence from a felony case tried before a jury, we consider only the evidence before the jury at the time it rendered its verdict of guilt. *Barfield v. State*, 63 S.W.3d 446, 450 (Tex. Crim. App. 2001) (citing *Munoz v. State*, 853 S.W.2d 558, 560 (Tex. Crim. App. 1993)). Aggravated robbery is a felony. TEX. PENAL CODE ANN. § 29.03(b). Appellant requested and obtained a jury trial. Accordingly, his testimony during the punishment phase cannot be used to challenge the sufficiency of the jury's determinations in the guilt-innocence phase of the trial. *See Barfield*, 63 S.W.3d at 450.

We overrule appellant's third issue.

### Ineffective Assistance of Counsel

In his first issue, appellant argues he received ineffective assistance of counsel.

## A.    Standard of Review

The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. *See* U.S. CONST. amend. VI. To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Andrews*, 159 S.W.3d at 101.

An appellant bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* at 814. We presume that a counsel's conduct falls within the wide range of reasonable professional assistance, and we will find a counsel's performance deficient only if the conduct is so outrageous that no competent attorney would have engaged in it. *Andrews*, 159 S.W.3d at 101.

The Court of Criminal Appeals recently stated that "[i]n making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). The court further stated that demonstrating ineffective assistance of counsel on direct appeal is "a difficult hurdle to overcome." *Id.* The court instructed, "[T]he record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.*

## B.  Analysis

Before he retained the attorney that represented him at trial, appellant had retained two previous attorneys. Certain offers for plea agreements were made by the State at that time. What offers were made and whether they were communicated from appellant's attorneys to him are the subject of dispute. Appellant argues that two offers were made that were not communicated to him. He argues that, because these offers were not made, he received ineffective assistance of counsel and, accordingly, he should be given a new trial.

A defendant is entitled to effective assistance of counsel in the plea bargaining process. *Ex parte Wilson*, 724 S.W.2d 72, 73 (Tex. Crim. App. 1987). We apply the *Strickland* standard in reviewing a claim of ineffective assistance of

11

counsel in the plea bargaining process. *Id.* Failure of counsel to inform a criminal defendant of plea offers made by the State constitutes deficient performance. *Id.* at 74. In such a situation, the inquiry becomes whether there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *See Thompson*, 9 S.W.3d at 812.

Appellant alleges that two offers for plea agreements were made that were not communicated to him.[3] One was a twelve-year offer. Appellant testified that his first attorney told him about a twelve-year offer, which he rejected. Appellant then testified that he later learned that the twelve-year offer had been repeated to his second attorney. He further testified that his second attorney never informed him of this renewed offer. Some time later, the offer went up to sixteen years, which appellant also rejected.

Appellant's second attorney was present to testify. She testified that she told appellant multiple times about the twelve-year offer. She explained that she learned from appellant that there had previously been an eight-year offer that appellant wanted back. She testified that appellant repeatedly refused the twelve-year offers because he wanted to accept the eight-year offer.

---

[3] The testimony regarding plea offers was not presented in a motion for new trial with a claim of ineffective assistance of counsel. Instead, the testimony was presented during a pretrial hearing before voir dire commenced. No relief was sought.

12

Appellant testified again after his second attorney testified. His counsel asked him about the eight-year offer. Appellant testified, "I've never heard about that, sir, ever." He further testified that, had he been told about the offer, he "probably would have accepted."

On appeal, appellant argues he received ineffective assistance of counsel from the first two attorneys due to their failure to communicate the eight-year offer and a renewed twelve-year offer.

For the eight-year offer, two parties testified about it: appellant and his second attorney. Appellant's second attorney testified that she learned about the eight-year offer from appellant. Appellant testified that, up until the time he was testifying, he had never heard about an eight-year offer. If we rely on appellant's testimony, there is no evidence of an eight-year offer. If we rely on appellant's second attorney's testimony, there was an eight-year offer, and it had been communicated to appellant at some point in time. Either way, there is no evidence that there was an eight-year offer that was not communicated to appellant.

For the renewed twelve-year offer, the evidence establishes that appellant rejected an earlier twelve-year offer. While appellant testified that he probably would have accepted the eight year offer, there is no indication in the record that he would have accepted the twelve-year offer after rejecting it the first time. That is, there is no evidentiary basis for us to conclude that circumstances changed

13

enough after the first offer that appellant would have accepted it the second time. Accordingly, assuming without deciding that the record supports a determination that appellant's second attorney's conduct was ineffective, there is no proof of a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *See Thompson*, 9 S.W.3d at 812.

We overrule appellant's first issue.

## Motion for New Trial

In his second issue, appellant argues the trial court abused its discretion by denying his motion for new trial on punishment based on alleged evidence of witness coercion.

### A.    Standard of Review

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Anderson v. State*, 193 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). We view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it is within the zone of reasonable disagreement. *Webb*, 232 S.W.3d at 112. A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.* We do not substitute our judgment for that of the trial court. *Id.* At a hearing on a motion for new trial, the trial court is the sole judge of the credibility of the witnesses and

14

the weight to be given their testimony. *Melton v. State*, 987 S.W.2d 72, 75 (Tex. App.—Dallas 1998, no pet.).

## B.    Analysis

The State issued a subpoena for appellant's ex-girlfriend to appear for the punishment phase of appellant's trial. At the time, appellant's ex-girlfriend had been charged with certain offenses and was out of jail on bail pending her trial. The State contacted her beforehand to let her know her attendance was required. The day before trial, the State again attempted to contact her, but had some difficulty. The lead prosecutor sent an email to the woman's attorney, telling him that if she did not show up, the State would seek to have her bond forfeited. Appellant alleged in his motion for new trial that the State also directly contacted her and told her the same thing.

Appellant's ex-girlfriend was present and testified at the punishment phase of appellant's trial. During her testimony, she stated that she knew that her testimony was unrelated to her pending charges and that no deals had been made in exchange for her testimony. She testified that she still would have been there even if there were no charges pending.

Appellant asked his ex-girlfriend to testify at his motion for rehearing. She refused. Appellant's only evidence at the motion for rehearing was the affidavit of the attorney for appellant's ex-girlfriend at the time of appellant's trial. The

attorney explained in the affidavit what the prosecutors had said to him, but did not identify any verbal, emotional, or physical response by his client.

Appellant argues that the State's tactics in securing his ex-girlfriend to testify constitute official oppression. Section 39.03 of the Texas Penal Code provides, "A public servant acting under color of his office or employment commits an offense if he intentionally subjects another to mistreatment or to arrest, [or] detention . . . that he knows is unlawful." TEX. PENAL CODE ANN. § 39.03(a)(1) (Vernon 2011). Appellant argues that the threat of bond forfeiture if his ex-girlfriend did not comply with the subpoena constituted duress.

Even assuming that this is a viable claim of official oppression, appellant has failed to establish how he has been harmed. The threat of bond forfeiture was made to ensure appellant's ex-girlfriend appeared to testify. There were no conditions placed on the content of her testimony. Even if the threat of bond forfeiture had not been made, appellant's ex-girlfriend was still legally obligated to attend and testify due to the subpoena. Additionally, during her testimony, the ex-girlfriend acknowledged that no deals had been made in exchange for her testimony and testified that she still would have been there even if there were no charges pending. We hold that, even if the threats of bond forfeiture could constitute official oppression, appellant has failed to establish that he was harmed.

We overrule appellant's second issue.

16

### *Brady* **Evidence**

In his fourth issue, appellant argues the State failed to properly disclose *Brady*[4] evidence. We hold this issue has not been preserved for appeal.

As part of its investigation, the State obtained a plastic baggie containing cocaine. Appellant argues that testing for DNA should have been done on the plastic baggie to support his defensive theory that he and the complainant were involved in the narcotics trade together. Appellant does not identify any place in the record, and we find no place in the record, where he objected to this alleged *Brady* violation. Because no complaint of a Brady violation was presented to and ruled on by the trial court, we hold this issue has not been preserved for appeal. *See* TEX. R. APP. P. 33.1(a); *Keeter v. State*, 175 S.W.3d 756, 759–61 (Tex. Crim. App. 2005) (holding that defendant did not preserve Brady claim for appellate review when it was not raised in his motion for new trial or during motion for new trial hearing); *Apolinar v. State*, 106 S.W.3d 407, 421 (Tex. App.—Houston [1st Dist.] 2003), *aff'd on other grounds*, 155 S.W.3d 184 (Tex. Crim. App. 2005) (holding that failure to request continuance waives complaint that State withheld exculpatory evidence in violation of *Brady*).

We overrule appellant's fourth issue.

---

[4] *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963) (holding "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment").

17

## Conclusion

We affirm the judgments of the trial court in both causes.


                                           Laura Carter Higley
                                           Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).